UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In Re: ARAMID ENTERTAINMENT
FUND LIMITED

DAVID MOLNER,

                     Appellant,

       – against –

REED SMITH LLP, JAMES C
McCARROLL, JAMES L. SANDERS,
FRANCISCA MOK, JORDAN W. SIEV,
KURT GWYNNE, GEOFFREY VARGA,
JESS SHAKESPEARE, KINETIC
PARTNERS, DUFF & PHELPS, LLC,
DAVID BREE, DAVIS SEYMOUR,
ROGER HANSON, and DMS
GOVERNANCE LTD,

                     Appellees.

**OPINION & ORDER**

21 Civ. 4840

Ramos, D.J.:

## I.    INTRODUCTION

David Molner brings this appeal of the April 30, 2021 Order issued by Judge David S. Jones of the United States Bankruptcy Court for the Southern District of New York denying his motion for abstention and remand of this adversary proceeding, which was originally commenced in New York state court.  On July 19, 2021, Defendants Reed Smith LLP, James C. McCarroll, James L. Sanders, Francisca Mok, Jordan W. Siev, and Kurt Gwynne moved to

dismiss this appeal for lack of appellate jurisdiction.[1]  For the reasons set forth below, Defendants' motion is GRANTED, and this appeal is dismissed for lack of jurisdiction.

## II.        BACKGROUND

Molner worked for Aramid Entertainment Fund, Limited (the "Fund"), one of the debtors[2] in the underlying Chapter 11 proceedings (the "Aramid bankruptcy").  Molner contends that Defendants, among them Reed Smith LLP, the Fund's counsel, conspired to oust him from the Fund, just as he was preparing to liquidate the fund.

Molner managed the Fund pursuant to agreements between the Fund and two entities: Aramid Capital Partners, LLP ("ACP"), and Asset Resolution Partners, Ltd. ("ARP").  ACP served as the Fund's only voting shareholder.  *See* Memorandum of Motion to Abstain and/or Remand ("AP Doc. 6") at 9.[3]

Reed Smith represented the Fund, and, although it never represented Molner personally, Molner alleged that the firm interacted with him "directly" on "more than a hundred occasions in [his] capacity as the Fund's manager."  *Id.*  Through this ongoing relationship, Molner gained familiarity with a number of Reed Smith's attorneys, including defendants James C. McCarroll, James L. Sanders, Francisca Mok, Jordan W. Siev, and Kurt Gwynne, (collectively, the "Individual Lawyer Defendants").  *Id.*

---

[1] Defendants Duff & Phelps LLC, Duff & Phelps (Cayman) Limited (incorrectly sued as Kinetic Partners), Geoffrey Varga, Jess Shakespeare, Waystone Governance, Ltd. f/k/a DMS Governance, LTD., Don M. Seymour, Roger Hanson, and David Bree also join in the motion to dismiss.  Docs. 19, 20.

[2] The debtors are as follows:  Aramid Entertainment Fund Limited; Aramid Liquidating Trust, Ltd. (f/k/a Aramid Entertainment Participation Fund Limited); and Aramid Entertainment, Inc.  AP Doc. 28.

[3] This opinion refers to docket entries from the adversary proceeding as "AP Doc.," to docket entries from the bankruptcy proceeding as "Bankr. Doc.," and to docket entries from the district court case (having been removed from state court) as "Removal Doc."  Docket entries from this appeal are referred to as "Doc.".

In January 2014, Molner approached a subcommittee of the Fund's Board of Directors, composed of defendants David Bree and Roger Hanson, with a plan to voluntarily liquidate the Fund in the Cayman Islands.  *Id.*  Molner contends that:  (1) Reed Smith and the Individual Lawyer Defendants feigned support for the liquidation plan, making misrepresentations to him, the Fund's Board, and the Fund's shareholders; (2) he relied on Reed Smith's recommendation when he hired defendants Geoffrey Varga and Jess Shakespeare to be the plan's joint voluntary liquidators, along with their firm, defendant Kinetic Partners (now Duff & Phelps, LLC); (3) he hired DMS Services and its founder Donald Seymour[4] to help him prepare his liquidation plan; and (4) Reed Smith, the Individual Lawyer Defendants, Varga, and Shakespeare all assured Molner that they were working towards liquidating the Fund in the Cayman Islands, and that they would not proceed with a bankruptcy in the United States absent his consent.  *Id.* at 6 n.1, 9-11.

### a.  Chapter 11 Petition

In June, 2014, Varga and McCarroll commenced the Aramid bankruptcy by filing a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York.  Bankr. Doc. 1.  Varga filed a declaration, describing the liquidation plan and Molner's role.  Bankr. Doc. 2.  In particular, Varga declared that the debtors faced liquidity concerns, based on the inability to collect on certain loans and litigation stemming from those loans, and that ACP, through Molner, had brought a "multitude of litigation" on behalf of the debtors or

---

[4] While the case captions in the bankruptcy, state court, removal, and adversary proceedings all list "Donald M. Seymour" as a defendant, the case caption for Molner's appeal—and for all other documents in the instant proceeding—replaces "Donald M. Seymour" with "Davis Seymour."  Neither party addresses this change or whether Donald Seymour and Davis Seymour are the same person.

In any event, the identity of Mr. Seymour is irrelevant to the Court's analysis.

caused the debtors to appear as defendants, which resulted in substantial litigation expenses. Bankr. Doc. 2 at 9, 10-18.

In October 2014, the debtors moved under 11 U.S.C. § 365(a) to reject an executory contract between the debtors and ARP, which they argued the business no longer needed. Bankr. Doc. 127 at 1-3. The Court authorized the rejection of the agreement. Bankr. Doc. 217. Molner, ACP, and ARP—with Molner acting on behalf of ACP and ARP—separately filed proofs of claim during the Aramid bankruptcy. The debtors objected to all three claims. Bankr. Docs. 521, 522, 523.

In February 2016, while these three claims remained pending, the Court confirmed the Debtors' Modified First Amended Joint Liquidating Plan of Reorganization (the "Plan"). Bankr. Doc. 710 (the "Confirmation Order"). The Plan provided for the establishment of a Distribution Trust to resolve all disputed claims and interests of the estate. Bankr. Doc. 667 at 23-26. The Plan also contained exculpation provisions for "released parties" that protected them from liability for any act taken or omitted in connection with the debtors' post-petition activity. *Id.* at 32. The Confirmation Order determined that the debtors proposed the Plan in good faith. Bankr. Doc. 710 at 4.

Also in February 2016, the debtors commenced an adversary proceeding against Molner and ACP, seeking to recoup $150.5 million in losses they alleged were incurred as a result of litigation fees and transactions caused by Molner's alleged misconduct. *See* Bankr. S.D.N.Y. 16-ap-1025, Doc. 1. In May 2016, the parties consented to proceed to arbitration before the London Court of International Arbitration. Bankr. S.D.N.Y. 16-ap-1025, Doc. 16. Under that agreement, the debtors consented to withdraw the adversary proceeding seeking recoupment, and

the parties held in abeyance any decision on the Molner claims in the Aramid bankruptcy

pending the final resolution of the arbitration.  *Id.*

In May 2020, the parties submitted a consent order that expunged, with prejudice,

Molner's (and his affiliated entities') claims against the Aramid bankruptcy estate (the

"Expungement Order").  *See* Bankr. Doc. 1018.  The Court entered the Expungement Order on

June 8, 2020.  Bankr. Doc. 1020.

### b.  State Court Action, Removal, and Transfer

On June 11, 2020, days after the entry of the Expungement Order, Molner brought suit

against Defendants in New York state court, alleging that they deceived him into relinquishing

control over Aramid and then fraudulently commenced Chapter 11 proceedings for Aramid so

they could usurp control of the company in bankruptcy and redirect its assets to themselves.

Removal Doc. 1-2 at 3.  Molner made these allegations in a summons; he did not file a

complaint.

Molner alleged that even as he prepared the liquidation plan, Defendants executed an

alternative plan to oust him from his managerial position and "install themselves as the control

persons," filing the Chapter 11 petition without his knowledge, as a means of "taking control out

of [his] hands and into their own."  *Id.*  at 3, 6.  Molner alleged this "bait-and-switch defrauded

[him] out of millions of dollars' worth of compensation he would have been entitled to."  *Id.*  at

3.  According to Molner, Defendants worked together to ensure he would lose income, business

opportunities, and other compensation and incur millions in fees associated with the bankruptcy

filing and related litigation.  *Id.* at 6.  As a result, Molner alleged, he suffered years of

reputational and emotional harm as he "weathered the loss of business" and the "sting of the

unnecessary bankruptcy," all while Defendants "quickly took control of Aramid's books, records

and treasury, and set about looting the assets through their control of the bankruptcy process and the hefty fees they charged." *Id.* at 6-7.  Though the allegations in his summons center on the bankruptcy proceedings, Molner nonetheless maintained he brought the state court action "exclusively in regard to [Defendants'] pre-petition conduct." *Id.* at 7.

In the summons, Molner characterized his claims as follows:

> Plaintiff's causes of action against all Defendants include fraud, fraudulent concealment, constructive fraud, breach of confidence, unjust enrichment, aiding and abetting fraud, and aiding and abetting breach of fiduciary duty.  Plaintiff's additional causes of action against Reed Smith, McCarroll, Sanders, Mok, Gwynne, and Siev include breach of fiduciary duty and breach of the written Joint Defense Agreement.  Plaintiff will also seek punitive damages.

*Id.*

On October 20, 2020, Defendants removed the state court action to this Court pursuant to 28 U.S.C. §§ 1334(b), 1446, and 1452(a), and Federal Rule of Bankruptcy Procedure 9027. Removal Doc. 1.  Defendants asserted the District Court had jurisdiction over the state court action under Section 1334(b) because it arose in and was related to the Aramid bankruptcy.  AP Doc. 1 at 33-35.  Specifically, Defendants contended the court resolving the state court action would need to:  (1) interpret and enforce the Plan and several bankruptcy court orders; (2) adjudicate whether Molner's claims were barred as a collateral attack on the Plan; (3) determine whether the doctrines of waiver and estoppel precluded Molner's claims; (4) rule on whether the proofs of claim filed by Molner, ACP, and ARP barred the claims raised by Molner in the state court action; and (5) decide whether this court retained exclusive jurisdiction to adjudicate those claims.  *Id.* at 35-49.

Defendants also moved for transfer to the bankruptcy court for this district.  Removal Doc. 1.  On November 4, 2020, Judge Lorna G. Schofield granted Defendants' request for transfer, noting significant overlap between Molner's claims and the issues raised in the

bankruptcy proceeding, and finding it necessary to interpret and enforce the approved bankruptcy plan and various other orders and agreements arising out of the bankruptcy proceedings to resolve Molner's claims.  Removal Doc. 17 at 2.  Accordingly, and pursuant to Standing Order M-431 and 28 U.S.C. § 157(a), which provide that cases arising under or related to Title 11 are referred to bankruptcy judges for this district, Judge Schofield referred this matter to the United States Bankruptcy Court for the Southern District of New York.  Removal Doc. 17.

### c.  Motion for Abstention and Remand

On November 18, 2020, Molner moved the Bankruptcy Court for abstention and remand. *See* AP Doc. 6.  He argued the Bankruptcy Court did not have either "arising in" or "related to" jurisdiction over the claims asserted in the state court action and that the state court action did not concern the Aramid bankruptcy, but only pre-petition conduct.  AP Doc. 6-1 at 14-15. Molner argued his case met the standard for mandatory abstention because (1) the motion was timely; (2) state law claims form the basis of the state court action; (3) at most some, but not all of the claims in the action are "related to" the Aramid bankruptcy, and none of his claims "arise[s] in" that proceeding or "arise[s] under" the Bankruptcy Code; (4) 28 U.S.C. § 1334 provides Defendants' sole basis for federal jurisdiction; (5) he commenced the action in state court; and (6) the state court could timely adjudicate the action.  *Id.* at 16-23.  In the alternative, Molner urged the Court to exercise permissive abstention and order an equitable remand of the action to state court, arguing that several factors—including that his claims are based solely on pre-petition conduct and that they arise only under state law—favor abstention and remand.  *Id.* at 24-34.

In response, Defendants argued that removal of the state court action was proper because the Bankruptcy Court has both "arising in" and "related to" jurisdiction under Section 1334.  AP

Doc. 12 at 11.  Defendants argued the Court has "arising in" jurisdiction for several reasons,

including, among others, that (1) Molner's claims allege damages that arose during the Aramid

bankruptcy; (2) there is an issue whether waiver, estoppel, and collateral attack doctrines bar

Molner's claims; (3) Molner asserts derivative claims that belong to the debtors' estates; and (4)

the action requires the Bankruptcy Court to interpret and enforce its prior orders, including those

regarding professional engagement and compensation and the Plans' release and exculpation

provisions; and (5) the action presents the question whether the *Barton* doctrine—which

precludes claims against Bankruptcy Court-appointed officers without advance leave of the

Bankruptcy Court—applies; *Id.* at 11-13.  Thus, Defendants argued, Molner cannot meet his

burden of establishing that mandatory abstention applies, and that neither permissive abstention

nor equitable remand applies to this case.

### d.   The Bankruptcy Court's Decision

The Bankruptcy Court heard oral argument on March 10, 2021, and issued a decision on

April 30, 2021, denying Molner's motion in full.  *See* AP Doc. 28.  The Bankruptcy Court found,

first, that Molner could not meet the standard for mandatory abstention, and, second, that he

failed to establish that the court should permissively abstain or equitably remand the matter even

if mandatory abstention does not apply.  *Id.* at 18-19, 20.

As the Bankruptcy Court made clear, the mandatory abstention doctrine requires federal

courts to abstain from hearing non-core bankruptcy matters concerning state law issues in certain

circumstances.  Under 28 U.S.C. § 1334(c)(2), abstention is required if each of six conditions is

met:  (1) the abstention motion is timely; (2) the action is based on a state law claim; (3) the

action is "related to" but does not "arise in" a bankruptcy case or "arise under" the Bankruptcy

Code; (4) section 1334 provides the sole basis for federal jurisdiction; (5) an action is

commenced in state court; and (6) that action can be "timely adjudicated" in state court.  *See N.Y.C. Emps.' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Secs. Litig.)*, 293 B.R. 308, 331 (S.D.N.Y. 2003), *aff'd sub nom. Cal. Pub. Emps' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004); *Renaissance Cosms., Inc. v. Dev. Specialists Inc.*, 277 B.R. 5, 12 (S.D.N.Y. 2002); *In re Dreier*, 438 B.R. 449, 457 (Bankr. S.D.N.Y. 2010).

In this case, as the Bankruptcy Court explained, there was no dispute as to the first, second, and fifth prongs of the mandatory abstention standard.  AP Doc. 28 at 15.  The parties disputed whether the third, fourth, and sixth prongs are satisfied.  The Bankruptcy Court found Molner failed to meet the third prong and, as a result, could not satisfy the standard for mandatory abstention.  *Id.* at 18.

Specifically, the Bankruptcy Court found Molner's claims and theories are "inseparable from the Aramid Bankruptcy, giving rise to 'arising under' jurisdiction of this Court."  *Id.*  As the Bankruptcy Court made clear, Molner's "own court filings belie his attempt to characterize his lawsuit as disconnected from the Aramid Bankruptcy:"

> Molner's own description of his claims . . . shows that the claims arise in the underlying Aramid Bankruptcy and that events within that bankruptcy are integral to his claims. Molner complains that the bankruptcy itself was "Defendants' means of taking control out of Plaintiff's hands," and caused him to incur fees and reputational harm resulting from the bankruptcy itself.

*Id.*  Even though the summons purported to advance common-law claims that could be brought outside of bankruptcy, those claims, the Bankruptcy Court reasoned, "so closely involve the administration of the Aramid Bankruptcy, and at least in substantial part depend on proof of events that occurred in that proceeding, that they qualify for 'arising in' jurisdiction."  *Id.*  This conclusion—that the state court action and the bankruptcy proceeding are inseparably intertwined—is "borne out by [Molner's] explanation of alleged damages, which clearly arose at

least in large part during the bankruptcy." *Id.* In other words, Molner "complains that the bankruptcy itself caused him to lose income . . . ." *Id.*

Beyond "the bankruptcy's centrality to the claims . . . as Molner himself describes them," the Bankruptcy Court reasoned, his claims also will require "consideration of whether proofs of claim that Molner and parties affiliated with him unsuccessfully advanced in the bankruptcy would bar the State Court Action," given that "Molner actively participated in the Aramid Bankruptcy on behalf of himself and on behalf of [his entities], and he waited until days after the [Bankruptcy Court's] Expungement Order to bring the State Court Action." *Id.* at 19. Other aspects of the Aramid bankruptcy also would be at issue, including the "Debtors' very decision to restructure in a U.S. bankruptcy proceeding," the "Court-authorized termination of the services agreement through which [Molner] was compensated," and the Bankruptcy Court's "approval of numerous fee requests for services that the Court necessarily found were reasonable and benefitted the estate." *Id.* at 19-20. The Bankruptcy Court also found that a "multitude" of its findings and conclusions likely would be implicated as well. *Id.* at 20-21.

Thus, "any review of Molner's claims would in part require the interpretation of this Court's orders throughout the Aramid Bankruptcy and an assessment of how if at all those orders affect Molner's entitlement to relief here." *Id.* at 21. That analysis, the Bankruptcy Court continued, "may well in turn require consideration of the events and submissions that led to those orders." *Id.* According to the Bankruptcy Court,

> All these aspects of the Aramid Bankruptcy are integral mechanisms by which the scheme Plaintiff alleges actually was carried out and caused whatever harm (if any) that he can show, and they are indispensable to Molner's damages claims (not to mention to numerous defenses that defendants have identified).

*Id.* Therefore, the Bankruptcy Court found, "no matter how he characterizes his claims, Molner's state-court proceeding in reality 'ar[ose] in' the Aramid Bankruptcy." *Id.* Because

10

"arising in" jurisdiction applies, the Court reasoned, Molner cannot meet the standard for mandatory abstention.  *Id.* at 23.

As to permissive abstention, the Bankruptcy Court found that because this action is "inextricably intertwined with the Aramid Bankruptcy and this Court's prior rulings," and because "bankruptcy-related issues predominate," it would be "inappropriate to permissively abstain from hearing this action."  *Id.* at 25.  As such, the Bankruptcy Court denied Molner's motion.  Molner now appeals that decision.

## III.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 158(a), this Court has appellate jurisdiction over "final judgments, orders, and decrees" of bankruptcy courts.  28 U.S.C. § 158(a)(1).  Under the collateral order doctrine, an order is treated as "final" if it "conclusively determine[s] a disputed question that is completely separate from the merits of the action, effectively unreviewable on appeal from a final judgment, and too important to be denied review."  *Mt. McKinley Ins. Co. v. Corning Inc.,* 399 F.3d 436, 442 (2d Cir.2005) (quoting *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 712 (1996)).  A district court may also grant discretionary leave to appeal an interlocutory order.  28 U.S.C. § 158(a)(3).  Leave to appeal an interlocutory order is granted only "in exceptional circumstances."  *Securities Investor Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC,* No. M 47, 2010 WL 185102, at *1 (S.D.N.Y. Jan.11, 2010).  Leave is appropriate where the interlocutory order (1) involves a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation.  *Id.* (citing 28 U.S.C. § 1292(b)).

11

A district court reviews a bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error.  *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir. 1990); *In re Residential Capital, LLC*, 519 B.R. 606, 612 (S.D.N.Y. 2014).  A bankruptcy court's discretionary decisions are reviewed for abuse of discretion. *See, e.g.*, *In re Boodrow*, 126 F.3d 43, 47 (2d Cir. 1997).

## IV.   DISCUSSION

Under § 158(a), certain "final judgments, orders, and decrees" of the Bankruptcy Court orders are appealable as of right.  In addition, a small class of rulings may be appealable as of right under the collateral order doctrine.  *See Will v. Hallock*, 546 U.S. 345, 349.  If not appealable as of right—because they are not final or do not fall within the collateral order exception—other interlocutory orders and decrees of the Bankruptcy Court nonetheless may be appealable "with leave of the court."  28 U.S.C. § 158(a)(3).  Here, Molner did not seek leave before filing his notice of appeal.  Thus, at issue, first, is whether the Bankruptcy Court order is final, and, second, is whether the collateral order doctrine applies.  The Court finds the order is not final, and the collateral order doctrine is inapplicable.  In other words, the Bankruptcy Court order is not appealable as of right.  Beyond this, the Court declines to grant Molner leave to appeal.

### a.  Final Order

The Bankruptcy Court's order denying abstention is not a final order under § 158(a)(1).  An order is final "if [it] finally dispose[s] of discrete disputes within the larger [bankruptcy] case."  *In re Penn Traffic Co.*, 466 F.3d 75, 77-78 (2d Cir. 2006) (citation omitted).  The resolution of a "dispute" does not simply refer to the determination of a separable issue.  *In re Flor*, 79 F.3d 281, 283 (2d Cir. 1996).  Rather, "[g]iven the strong federal policy against

piecemeal appeals, . . . a 'dispute,' for appealability purposes in the bankruptcy context, means at least an entire claim on which relief may be granted." *In re Fugazy Exp, Inc.*, 982 F.2d 769, 775-76 (2d Cir. 1992). In other words, for a Bankruptcy Court order to be final within the meaning of § 158, the order need not resolve all of the issues raised by the bankruptcy, but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief. *In re Prudential Lines, Inc.*, 59 F.3d 327, 331 (2d Cir. 1995). While the concept of finality in bankruptcy matters is more flexible than in ordinary civil litigation, "even that flexibility is limited by the requirement that there be a final decision on the discrete issue at bar." *In re Chateaugay Corp.*, 838 F.2d 59, 61-62 (2d Cir. 1988) (citation omitted).

As the Second Circuit has held, finality analysis under § 158(a) involves "the same standards of finality that [courts] apply to an appeal under 28 U.S.C. § 1291." *In re Prudential Lines, Inc.*, 59 F.3d at 331; *In re Integrated Res., Inc.*, 3 F. 3d 49, 53 (2d Cir. 1993) (citation omitted); *In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir. 1992). And, in cases involving appeals under § 1291, the Second Circuit specifically has held that an "order declining to abstain [is] not a final decision," because it "d[oes] not resolve any of the substantive issues addressed in the lawsuit." *Beightol v. UBS Painewebber, Inc.*, 354 F.3d 187, 189 (2d Cir. 2004). Rather, the challenged order "merely determined whether the case would be adjudicated." *Id.*; *see also RRI Realty Corp. v. Inc. Vill. of Southampton*, 766 F.2d 63, 65 (2d Cir. 1985) ("The decision *not* to abstain . . . is in no way a final decision . . . and is consequently not appealable under 28 U.S.C. 1291.").

Similarly, as another court in this district made clear, a bankruptcy court denying a motion to abstain and remand "is not a final order under section 158(a)(1)" because "it does not resolve an entire claim." *In re Extended Stay, Inc.*, No. 09-13764 (JMP), 2012 WL 491436, at *2

(S.D.N.Y. Feb. 14, 2012).  That is the case here.  In the instant case, the challenged order is a denial of a motion to abstain and remand.  Under Second Circuit precedent, such an order is non-final and is, therefore, not appealable as of right.

### b. Collateral Order Doctrine

A "small class" of rulings may be appealable as of right under the collateral order doctrine.  *Will*, 546 U.S. at 349.  While they may not conclude the litigation, such rulings "conclusively resolve[e] claims of right separable from, and collateral to, rights asserted in the action."  *Id.*  A collateral order is only appealable if it "conclusively determine[s] a disputed question that is completely separate from the merits of the action, [is] effectively unreviewable on appeal from a final judgment, and [is] too important to be denied review."  *Mt. McKinley*, 399 F.3d at 442 (quoting *Quackenbush*, 517 U.S. at 712 (1996)).  Here, the parties dispute whether the Bankruptcy Court decision denying abstention is reviewable on appeal.

While a decision to abstain falls within the collateral order exception—because it surrenders federal jurisdiction to a state court—a *refusal* to abstain, under ordinary circumstances, would be reviewable on appeal from final judgment, rendering the collateral order exception inapplicable.  *Mt. McKinley*, 399 F.3d at 442; *see also Beightol*, 354 F.3d at 189 ("decisions not to abstain are not so conclusive of the litigation or effectively unreviewable as part of an eventual final judgment as to be appealable as collateral orders . . .); *RRI Realty*, 766 F.3d at 65 ("the refusal to abstain does not fit within the small class of decisions which, although not final . . . , are nevertheless appealable as collateral orders").  As the Second Circuit has made clear, "a decision refusing to abstain is reviewable, both theoretically and as a practical matter, on appeal from a merits determination."  *RRI Realty*, 766 F.3d at 65.  "In the event of error in the

decision not to abstain, the effects of any final judgment can still be undone, and the judgment vacated." *Id.*

Molner suggests these are not "ordinary circumstances" and, as such, the Bankruptcy Court order is unreviewable on appeal.  Doc. 23 at 10-12.  He argues the Bankruptcy Court order is "effectively unreviewable on appeal" because Defendants intend to rely on federal bankruptcy law:  in light of this intent, Molner writes, it is "highly unlikely if not impossible"—in the event of a successful appeal and remand to state court—that the state court "would be willing to reach a different conclusion than a federal bankruptcy court on [bankruptcy issues]." *Id.* at 11.  As Defendants write, this "entire argument . . . is premised on the strained proposition that a state court, on a hypothetical post-verdict remand, might afford persuasive value to the Bankruptcy Court's hypothetical, vacated ruling on the merits of his state law claims." Doc. 24 at 4.

Beyond this, Molner argues this concern is exacerbated by his jury trial demand.  Doc. 23 at 11.  According to Molner, it would be "absurd" and "unrealistic" for a state court—in the event of an appeal—to "start from scratch" and "go through a whole new jury trial." *Id.* at 11-12.

These are not extraordinary circumstances.  *See, e.g., Mt. McKinley*, 399 F.3d 436 at 443 (circumstances *not* ordinary where issue preclusion would bar further litigation and prevent appellate review of abstention decision); *see also In re Extended Stay*, 2012 WL 491436 at *2 (noting "complex and unusual posture" in *Mt. McKinley*).  As Defendants argue, that "one judge might be persuaded by another's reasoning as to the merits of certain underlying claims or defenses has no bearing on the dispositive factor here:  the [Bankruptcy Court order] itself—*i.e.*, the decision not to remand or abstain—will plainly be reviewable by a judge of this Court following final judgment." Doc. 24 at 4.  In other words, that a state court might be likely to

reach a certain conclusion *after* appeal does not change that the order denying abstention is reviewable on appeal.

As to Molner's concerns about having to "start from scratch," the Second Circuit made clear in *RRI Realty* that while "[i]t is true that the refusal to accelerate review may force a would-be-appellant to litigate in an improper forum and later render an entire proceeding nugatory," these "dangers . . . are not the sort upon which the [collateral order] exception is founded." *RRI Realty Corp.*, 766 F.2d at 65.

Because this is an order denying abstention, under ordinary circumstances, it is reviewable on appeal from final judgment, and the collateral order exception does not apply. *Mt. McKinley*, 399 F.3d at 442; *Beightol*, 354 F.3d at 189; *RRI Realty Corp.*, 766 F.2d at 65.

### c.   Leave to Appeal

Even when orders are not final under § 158(a), district courts have jurisdiction to hear appeals from interlocutory orders and decrees with leave of the court. *In re Sterling*, No. 17 Civ. 248, 2018 WL 1157970, at *3 (S.D.N.Y. Mar 2, 2018) (citing *In re Kassover*, 343 F.3d 91, 94 (2d Cir. 2003)), *appeal dismissed*, No. 18-995, 2018 WL 4859355 (2d Cir. July 23, 2018); *see also* Fed. R. Bankr. P. 8004 (providing procedure for appeal requiring leave).

While neither § 158 nor the Bankruptcy Rules "provides guidelines for determining whether a district court should grant leave to appeal, . . . most district courts in the Second Circuit have applied the analogous standard for certifying an interlocutory appeal from a district court order, set forth in 28 U.S.C. § 1292(b)." *In re Cutter*, No. 05 Civ. 5527 (FB), 2006 WL 2482674, at *4 (E.D.N.Y. Aug. 29, 2006) (citations omitted); *see also In re Futter Lumber Corp.*, 473 B.R. 20, 26–27 (E.D.N.Y. 2012).

In order to permit an interlocutory appeal under § 1292(b), the order being appealed must involve "(1) a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  All three § 1292(b) criteria must be met before a court may grant leave to appeal.  *In re Futter Lumber Corp.*, 473 B.R. at 26–27 (citing *N. Fork Bank v. Abelson,* 207 B.R. 382, 390 (Bankr. E.D.N.Y. 1997)).  "This standard is strictly applied as interlocutory appeals from bankruptcy courts' decisions are 'disfavored' in the Second Circuit."  *In re Madoff*, No. 08 Civ. 01289 (SAS), 2010 WL 3260074, at *3 (S.D.N.Y. Aug. 6, 2010) (internal citation omitted).  "The party seeking an interlocutory appeal has the burden of showing exceptional circumstances to overcome the general aversion to piecemeal litigation and justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment."  *In re Perry H. Koplik & Sons, Inc.,* 377 B.R. 69, 74 (S.D.N.Y. 2007) (citations omitted).

In addition, "district court judges have broad discretion to deny certification even where the statutory criteria are met." *SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06-CV-15375 (KMK), 2007 WL 1119753, at *1 (S.D.N.Y. Apr. 12, 2007) (quoting *Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc.*, 71 F. Supp. 2d 139, 166 (E.D.N.Y. 1999)).  "Indeed 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'"  *In re Lehman Bros. Holdings Inc.*, No. 13 Civ. 2211 (RJS), 2014 WL 3408574, at *1 (S.D.N.Y. June 30, 2014) (quoting *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 921 F.2d 21, 25 (2d Cir. 1990)).  "Section 1292(b)'s legislative history reveals that although that law was designed as a means to make an interlocutory appeal available, it is a rare exception to the

17

final judgment rule that generally prohibits piecemeal appeals." *Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996).  The use of § 1292(b) is therefore "reserved for those cases where an intermediate appeal may avoid protracted litigation." *Id.* (citing *Milbert v. Bison Labs.*, 260 F.2d 431, 433–35 (3d Cir. 1958)).

Here, even assuming the first two factors are met, Molner fails to establish the third factor:  that an immediate appeal may materially advance the ultimate termination of the litigation.  This third factor, which primarily concerns judicial efficiency, is considered the most important of the § 1292(b) factors.  *See SEC v. Gruss*, No. 11 Civ. 2420 (RWS), 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012); *In re Lehman Bros.*, 2014 WL 3408564, at *1.  The factor is satisfied when the "appeal promises to advance the time for trial or to shorten the time required for trial." *In re St. Clair*, No. 13 Misc. 1057 (SJF), 2014 WL 279850, at *5 (E.D.N.Y. Jan 21, 2014) (citing *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. at 74).

Here, in urging the Court to grant him leave to appeal, Molner focuses much of his argument on Defendants' failure to show that an immediate appeal would not materially advance the litigation.  Doc. 23 at 13.  This is not Defendants' burden.  Instead, Molner must prove this factor.  And this he cannot do.  Molner argues that "waiting to appeal the jurisdiction question after a final judgment would be incredibly inefficient . . . ." Doc. 23 at 13.  If, Molner argues, he succeeds in overturning the Bankruptcy Court order in an appeal at the conclusion of the case, the parties "will have to do everything over again." *Id.*  In support of this argument, Molner cites a single case, noting the Second Circuit has "considered 'inefficiencies' in determining finality," and, as such, it follows that "efficiencies matter to the Second Circuit's analysis." *Id.* at 14.  Molner argues the "efficiencies—and a prompt resolution of this litigation—favor conclusively determining jurisdiction prior to litigating the merits, not after." *Id.* (citing *In re The Bennett*

*Funding Grp., Inc.*, 439 F.3d 155, 162-64 (2d Cir. 2006)).  But this Second Circuit case did not involve a motion for leave to appeal.  In any event, the Court agrees with Defendants that, if anything, "an interlocutory appeal at this stage would further *prolong* the litigation and prevent it from moving forward on the merits, even as the case enters its second year." Doc. 24 at 13.

The more relevant case here is *In re Extended Stay*, where Judge Scheindlin, facing the exact same circumstances—an appeal of an order denying abstention and remand—found an "immediate appeal would not advance the termination of this litigation to the degree that it presents an 'exceptional circumstance' justifying leave to appeal an interlocutory order." 2012 WL 491436, at *3.  As Judge Scheindlin wrote, "[a]t most, the resolution of this appeal would finally determine whether this action proceeds in the Bankruptcy Court or New York state court. If that were a sufficient concern to grant leave to appeal an interlocutory order, then *every* decision not to abstain and remand would be immediately appealable." *Id.*  As Judge Scheindlin made clear, the Second Circuit has stated otherwise. *Id.* (citing *RRI Realty Corp.*, 766 F.2d at 65).  As this case, as did *Extended Stay*, involves an appeal from a denial of abstention, and as Molner has not otherwise established the exceptional circumstances required to allow an appeal, he is denied leave to appeal.

## V.    CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 13, and close the case.

It is SO ORDERED.

Dated:    January 12, 2022
             New York, New York

_____
             EDGARDO RAMOS, U.S.D.J.